# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00824-NYW

JOEL DIAZ-CEJA,

      Petitioner,

v.

KEVIN McALEENAN,[1]

      Respondent.

---

## MEMORANDUM OPINION AND ORDER ON PETITION FOR HABEAS CORPUS

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Petitioner Joel Diaz-Ceja's ("Petitioner" or "Mr. Diaz-Ceja") Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("the Petition"). [#7, filed April 26, 2019]. The then-presiding judge, the Honorable Gordon P. Gallagher, issued an Order to Show Cause ordering Respondent, the then-Secretary for Homeland Security Kirstjen Nielsen ("the Secretary" or "Respondent") to show cause why Petitioner is not being illegally detained. [#8]. The Secretary filed a Response on May 23, 2019 [#21] and Petitioner filed a Reply on June 10, 2019. [#23]. The undersigned presides over this case pursuant to 28 U.S.C. § 636(c), the parties' consent [#16], and the Order of Reference dated May 20, 2019

---

[1] When Petitioner initiated this action, Kirstjen M. Nielsen was the Secretary of Homeland Security. Since that time, Secretary Nielsen resigned her post, and Kevin McAleenan is currently the Acting Secretary of Homeland Security. [#21 at 1 n.1]. Acting Secretary McAleenan is automatically substituted as a party. Fed. R. Civ. P. 25(d).

[#18]. For the reasons stated in this Memorandum Opinion and Order, the Petition for Habeas Corpus is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND[2]

Mr. Diaz-Ceja is a thirty-three-year-old Mexican citizen resident in the United States and currently subject to removal proceedings. [#7 at ¶ 1]. He arrived without inspection as a child in May 1991 and has lived in the United States since that time. [*Id.* at ¶ 2]. In 2016,[3] Mr. Diaz-Ceja entered into a deferred judgment for Transporting a Controlled Substance in violation of Nevada Revised Statute § 453.321 ("the drug offense"). [*Id.*]. Following his plea, Petitioner entered a diversionary program under a deferred judgment. [*Id.*; #21-2 at 5]. On March 9, 2017, while checking in with his probation officer, he was detained and issued a Notice to Appear ("the Notice" or "NTA") by officers from the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). [*Id.*; #21-1 at 2; #21-17 at ¶ 6]. The Notice did not have a date and time for Mr. Diaz-Ceja's appearance at further proceedings. [#7 at 15].

---

[2] Because Mr. Diaz-Ceja is proceeding *pro se*, the court liberally construes his pleadings but may not act as his advocate. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Indeed, although he is not represented by counsel, Mr. Diaz-Ceja must still comply with procedural rules and satisfy substantive law to be entitled to relief, as is required of represented parties. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008) (observing that a party's pro se status does not relieve him of the obligation to comply with procedural rules); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[3] Mr. Diaz-Ceja avers that he pleaded guilty on October 4, 2016 [#7 at ¶ 2], but the Corrected Deferred Judgment reflects that he entered his guilty plea on August 9, 2016 [*id.* at 16] and the Government alleges that his plea was entered on October 10, 2016 [#21 at 1 (citing #21-17 at ¶ 5)] as well as on August 9, 2016 [#21-15 at 3]. It appears that Petitioner tendered his guilty plea on August 9, 2016, but was adjudged guilty on October 4, 2016. [*Id.* at 16]. The presiding judge then signed the Corrected Deferred Judgment on October 10, 2016. [#21-2 at 6]. Because the timing of the guilty plea and deferred judgment do not affect its analysis, this court need not resolve the inconsistencies as to the precise date of either.

Mr. Diaz-Ceja was initially detained pursuant to ICE's discretion to detain an alien under 8 U.S.C. § 1226(a), which provides "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." He then requested a bond redetermination hearing before an Immigration Judge ("IJ") before the Executive Office for Immigration Review ("EOIR") to seek his release pending removal proceedings. [#21-17 at ¶ 8; #21-3 at 2]. The IJ denied bond on April 11, 2017. In doing so, the IJ did not find that he was required to hold Mr. Diaz-Ceja pending a removal decision because he was inadmissible due to his conviction relating to a controlled substance as defined by 21 U.S.C. § 802. Instead, the IJ concluded that Petitioner did not meet his burden of proving that he is not a danger to the community and in fact finding that Mr. Diaz-Ceja's drug offense rendered him a *per se* danger to the community. [#21-3 at 3]. Mr. Diaz-Ceja appealed the denial of his request to change his custody status to the Board of Immigration Appeals ("BIA"). [#21-17 at ¶ 9; #21-4]. The BIA rejected Petitioner's appeal. [#21-4 at 3].

On June 6, 2017, Mr. Diaz-Ceja appeared before an IJ for a hearing on the merits of his immigration status and he was ordered removed to Mexico. [#21-5 at 2–3]. Mr. Diaz-Ceja conceded removability based on the fact that he had entered without permission [#21-6 at 7-8], but sought relief from removal based on asylum, withholding of removal, and under the Convention Against Torture. The IJ denied his requests for relief, finding him ineligible based on his conclusion that Mr. Diaz-Ceja's drug offense qualified as an "aggravated felony." [#21-5; #21-6]. Petitioner again appealed to the BIA which again denied relief in an order dated September 5, 2017, rejecting Mr. Diaz-Ceja's argument that his deferred judgment did not qualify as a conviction for immigration law purposes. [#21-6 at 6]. Petitioner then sought review in the United

States Court of Appeals for the Ninth Circuit ("Ninth Circuit") which issued a temporary stay of removal pending a decision on the matter before it. [#21-7 at 2 (the stay)]. While this review was pending and pursuant to governing law in the Ninth Circuit, ICE conducted an evaluation of Petitioner's detention and decided not to release Mr. Diaz-Ceja pending the Ninth Circuit's review. [#21-8 at 2].

Mr. Diaz-Ceja then again requested bond redetermination before an IJ and was again denied relief on December 18, 2017. [#21-9 at 2–3]. Less than a month later, Mr. Diaz-Ceja made the same request with the same result. [#21-10 at 2]. Petitioner then appealed this January decision to the BIA which dismissed the appeal on June 29, 2018. [#21-11 at 2]. In the interim, Petitioner was transferred to his current facility, the "GEO CDF," in Aurora, Colorado, and the Ninth Circuit issued a formal stay of removal pending review. [#21-12 at 2; #21-17 at ¶ 18].

On August 3, 2018, Mr. Diaz-Ceja filed a motion to reopen and terminate removal proceedings which was denied. [#21-13 at 2–3]. The BIA affirmed on April 9, 2019 because Petitioner's drug offense constituted an aggravating felony which rendered him ineligible for cancellation of removal and the motion to reopen was untimely in any event. [#21-14 at 2–3]. On February 19, 2019, the Government sought remand from the Ninth Circuit for the BIA to consider intervening changes in caselaw that might alter the effect of Petitioner's drug conviction upon his immigration status.[4] [#21-15]. The Ninth Circuit granted the remand to the BIA on April 22,

---

[4] Specifically, the Government acknowledged that in *United States v. Turner*, 706 F. App'x 345–46 (9th Cir. 2017), the Ninth Circuit held that N.R.S. § 453.321 was not categorically a controlled substance offense, because it covers substances that are not within the Federal Controlled Substances Act, and subsequently upon remand, the United States District Court for the District of Nevada held that a conviction under NRS § 453.321 did not constitute a Guidelines Controlled Substance offense. *United States v. Turner*, 2018 WL 813875, at *2 (D. Nev. Feb. 9, 2018).

2019. [#21-16]. As discussed at the Status Conference held June 6, 2019, the briefing before the BIA is ongoing and Petitioner is not currently subject to an order of removal. [#22].

Mr. Diaz-Ceja filed the present Application for Habeas Corpus on March 19, 2019. [#1]. After an initial screening process was held, the court twice ordered Mr. Diaz-Ceja to file amended Petitions. On April 26, 2019, Mr. Diaz-Ceja filed the operative Amended Application for Writ of Habeas Corpus ("Petition"). [#7]. In the Petition, he identifies three claims: (1) a violation of the due process guaranteed by the Fifth Amendment, arguing that "due process requires that the government establish, at an individualized hearing before a neutral decision maker, that Petitioner's detention is justified by clear and convincing evidence of flight risk and danger, even after consideration whether alternatives o [sic] detention could sufficiently mitigate that risk;" (2) a violation of the prohibition against excessive bail under the Eighth Amendment; and (3) termination of removal proceedings for lack of jurisdiction based on the lack of specific time and date for removal proceedings on the NTA. [#7 at 5]. The court subsequently issued an Order to Show Cause to the Government to demonstrate why Petitioner's continuing detention was not illegal. [#8]. The matter was then drawn to the undersigned Magistrate Judge who presides pursuant to 28 U.S.C. § 636(c) with the Parties' consent. [#16, #18]. Briefing is now complete [#21; #23], and thus, the court turns to the merits of the instant Petition.

## LEGAL STANDARD

This Court may review a petition for writ of habeas corpus on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for immigration detention unrelated to a final order of removal. *See Carbajal v. Holder*, 43

F. Supp. 3d 1184, 1186 (D. Colo. 2014) (citing *Demore v. Kim*, 538 U.S. 510, 517–18 (2003)). Relevant here, a detainee may bring a habeas petition under this section if his or her confinement violates the Fifth Amendment's guarantee of due process. *See, e.g.*, *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1212 (10th Cir. 2009).

It is well established that the Fifth Amendment entitles noncitizens[5] to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)); *Fong Yue Ting v. United States*, 149 U.S. 698, 724 (1893) ("[All noncitizens] residing in the United States for a shorter or longer time, are entitled, so long as they are permitted by the government of the United States to remain in the country, to the safeguards of the constitution, and to the protection of the laws, in regard to their rights of person and of property, and to their civil and criminal responsibility."). Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)); *see also Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) ("We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards."). Case law emphasizes that due process usually requires that the Government bears the burden of proving facts to justify civil detention. *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001); *Foucha*, 504 U.S. at 80; *Addington v. Texas*, 441 U.S. 418, 431–33 (1979).

---

[5] Though recognizing that the term used in the statute and case law is often "alien," this court prefers and will utilize the term "noncitizen" unless directly quoting the statute, case law, or a Party's briefing.

**ANALYSIS**

**I.     First Claim:  Due Process Challenge to Allocation of the Burden of Proof in Bond Redetermination Proceedings**

**A.     Petitioner's Detention**

Because it is significant to this court analysis, the court first considers the framework of detention pending removal generally, and then the specific basis for Petitioner's Detention. Section 1226(a) of Title 8 of the United States Code provides that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." After ICE makes an initial decision to detain a noncitizen, the noncitizen may request a custody redetermination hearing from an IJ at any time before a removal order becomes final. 8 C.F.R. § 236.1(d)(1). That bond decision is appealable to the BIA. 8 C.F.R. § 1003.19(f). But pursuant to 8 U.S.C. § 1226(c), the Attorney General "shall take into custody" any noncitizen who is inadmissible by reason of having committed any offense covered by 8 U.S.C. § 1182(a)(2), including "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21);" and noncitizens "who the consular officer or the Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance of in any listed chemical (as defined in section 802 of title 21), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so." Noncitizens who are subject to mandatory detention under 8 U.S.C. § 1226(c) may only be released on a narrow basis, i.e., when release from custody is "necessary to provide protection to a witness, potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close

7

associate of a witness, potential witness, or person cooperating with such investigation," and the noncitizen "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C § 1226(c)(2).

Though the Government argues that the Petitioner is "now held under § 1226(c)," the record before the court does not support such a conclusion. Though not entirely clear, this court interprets the Government's argument to be that Mr. Diaz-Ceja was afforded a bond hearing under § 1226(a) only because the Ninth Circuit's holding at the time that noncitizens who were not taken into custody immediately upon release from their criminal sentences could not be subject to mandatory detention without a bond hearing, a standard that has since been abrogated by the Supreme Court in *Nielsen v. Preap*, 139 S.Ct. 954, ___ U.S. ___ (2019). [#21 at 10–11]. But the record does not demonstrate that the Attorney General first found that Mr. Diaz-Ceja was subject to mandatory detention pursuant to § 1226(c) but nevertheless afforded him a bond hearing under § 1226(a). Nor is there any admission that he is subject to mandatory detention by Mr. Diaz-Ceja in the record.

There can no dispute that Mr. Diaz-Ceja was originally taken into custody pursuant to a NTA that charged him with inadmissibility based on § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as a noncitizen present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General. [#21-2]. The NTA reflects no charge that he is inadmissible based on his drug offense. [*Id.*]. He was provided a bond determination hearing pursuant to § 1226(a), with no mention of § 1226(c).

With respect to his initial bond redetermination hearing, the IJ did not find the Petitioner to be subject to mandatory detention under 8 U.S.C. § 1226(c) but found that Mr. Diaz-Ceja had not carried his burden of establishing that he was not a danger to the community. [#21-3 at 2-4]. On appeal, the BIA affirmed the IJ's denial of bond on the same grounds. [#21-4 at 2-3]. ICE's Decision to Continue Detention dated December 8, 2017 also makes no mention of mandatory detention. [#21-8 at 2]. Similarly, there is no indication in either the IJ's Order dated December 18, 2017 or January 11, 2018 that Mr. Diaz-Ceja was subject to mandatory detention for his criminal conviction. [#21-9; #21-10]. And the BIA decision dated June 25, 2018, indicates that the IJ declined to exercise jurisdiction to conduct a custody redetermination hearing because he believed that Petitioner was subject to a final order of removal (and thus, detention pursuant to 8 U.S.C. § 1231(a)(6)), and then affirmed the IJ's determination, presumably because the Ninth Circuit's requirement that a noncitizen receive periodic bond hearings after an initial bonding hearing had been abrogated by the United States Supreme Court's ruling in *Jennings v. Rodriguez*, 138 S.Ct. 830, ___ U.S. ___ (2018). There is no discussion of the elements of § 1226(c) or 8 U.S.C. § 1182(a)(2), or whether Mr. Diaz-Ceja's drug offense satisfies those elements. There are simply no indicia that either the IJ or the BIA determined that Mr. Diaz-Ceja was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) based on his drug offense.

While the Government contends that "[t]he criminal grounds on which an alien is subject to mandatory detention are also grounds on which the alien is removable from the United States," and Mr. Diaz-Ceja was able to seek a hearing to challenge the grounds for his removal [#21 at 8-9], the issues, and the attendant legal standards, are not identical. Mr. Diaz-Ceja is challenging the IJ's substantive finding that he was ineligible for asylum based on his conviction for an

"aggravated felony,"[6]  *See* [#21-6]; 8 U.S.C. § 1158(b)(2)(B).  In doing so, there is no discussion focused on what provision of the INA applies to Mr. Diaz-Ceja's detention or whether, due to the initial determination of "aggravated felon," Petitioner is subject to mandatory detention pursuant to § 1226(c).

Accordingly, this court declines to make such a finding here.  First, despite the Government's argument to the contrary [*id.*], there is no indication in the record that Mr. Diaz-Ceja has ever received a *Joseph* hearing to challenge whether he is subject to mandatory detention under 8 U.S.C. § 1226(c) because, of course, there is no indication that the Attorney General has ever made such determination.  Second, as a matter of administrative law generally, district courts decline to substitute their judgment for agency action.  Indeed, though not applicable in this case, petitioners are ordinarily required to exhaust their administrative remedies prior to seeking a writ under § 2241. *Baquera v. Longshore*, 948 F. Supp. 2d 1258, 1259 (D. Colo. 2013) (citing *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam)) *abrogated on different grounds by Nielsen v. Preap*, 139 S.Ct. 954 (2019) (holding that 8 U.S.C. § 1226(c) may not be read to require a bond hearing under § 1226(a) when a noncitizen is not detained immediately after his criminal sentence).  And in the immigration context, district courts lack jurisdiction to review any exercise of discretion or orders against criminal noncitizens as to a particular individual, including bond determinations.  8 U.S.C. §§ 1226(e), 1252(f)(2).  Put another way, had the IJ or BIA determined Mr. Diaz-Ceja was a criminal noncitizen requiring detention, this court would lack jurisdiction to

---

[6] It appears that Mr. Diaz-Ceja did not challenge the IJ's denial of withholding of removal on appeal to the BIA, and the BIA's affirmance of the IJ's denial of relief under the Convention Against Torture is not intertwined with his criminal history, and therefore, does not appear relevant to this analysis.  [#21-6].

review that substantive determination. Thus, it seems unlikely that Congress intended this court to make any determination that Mr. Diaz-Ceja is subject to mandatory detention in the first instance when nothing in the record indicates that either the IJ or the BIA passed on this issue.

Accordingly, this court proceeds based on the only conclusion that is clear from the record: that Mr. Diaz-Ceja is held subject to § 1226(a), not § 1226(c). It is undisputed that Mr. Diaz-Ceja has been afforded a number of reviews and hearings on his custody status, and if the issue before the court was focused upon whether Mr. Diaz-Ceja has been afforded a sufficient quantity of process or if the record was clear that Petitioner was subject to mandatory detention under § 1226(c), the court's analysis would necessarily be different. But given the record before it, the precise question before the court in this habeas action is whether Mr. Diaz-Ceja is being held pursuant to 8 U.S.C. § 1226(a) in constitutionally flawed manner, i.e., instead of placing the burden upon the noncitizen that he should be released, the Government should bear the burden of establishing that detention is necessary. The court turns to that question now.

### B.      Relevant Authority

#### 1.      BIA Decisions

The BIA addressed the question of burdens in 1976 in the case *In re Patel*, 15 I. & N. Dec. 666, 666 (BIA 1976) where it found a presumption against detention, holding that "[a]n alien generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security, or that he is a poor bail risk[.]" (citations omitted). *See also* Mary Holper, *The Beast of Burden in Immigration Bond Hearings*, 67 CASE W. RES. L. REV. 75, 82 (2016). Both before and after *Patel*, the executive recognized important due process rights for noncitizens facing detention pending removal. *See e.g.*, *In re Kwun*, 13 I. & N. Dec. 457, 464

(B.I.A. 1969) ("In our system of ordered liberty, the freedom of the individual is considered precious. No deportable alien should be deprived of his liberty pending execution of the deportation order unless there are compelling reasons and every effort should be made to keep the period of any necessary detention at a minimum."); *In re Andrade*, 19 I. & N. Dec. 488, 489 (BIA 1987); *Matter of Spiliopoulos*, 16 I. & N. Dec. 561, 563 (BIA 1978).

The BIA reversed this longstanding interpretation in the case *In Re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999), where it shifted the burden to the noncitizen to prove that "his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings." In other words, once a noncitizen has been detained, he is presumptively detained unless he can affirmatively prove to the IJ's satisfaction that he is not a threat or flight risk. More recently, the BIA reiterated that "[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The BIA relied on the prior United States Supreme Court rulings that noncitizens in removal proceedings had no constitutional right to release on bond and that the Attorney General enjoys "extremely broad discretion in deciding whether or not to release an alien on bond." *Id.* (citing *Carlson v. Landon*, 342 U.S. 524, 534 (1952)).[7] Citing to *Patel*, the BIA held that "[i]n general, an Immigration Judge must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Guerra*, 24 I. & N. Dec. at 39.

---

[7] The *Patel* court also relied on *Carlson* for its contrary holding. 15 I. & N. Dec. at 666.

## 2.    Supreme Court Precedent

The Supreme Court (and the Tenth Circuit) have long held that Congress has plenary power over immigration.  *See Harisiades v. Shaughnessy,* 342 U.S. 580, 588–89 (1952); *Lopez v. U.S. I.N.S.*, 758 F.2d 1390, 1392 (10th Cir. 1985).  But that power is subject to constitutional limitations.  *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001).  The *Zadvydas* Court held, in the context of mandatory detention after a final order of removal, that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  Thus, the burden in the first instance is borne by the noncitizen petitioner, to be rebutted by the Government only once the noncitizen makes the requisite showing.  *Id.* at 701.

In *Demore v. Kim*, the Supreme Court held that mandatory detention under § 1226(c) is constitutional, observing that the Court had a "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal hearings."  538 U.S. 510, 526 (2003).  In so ruling, the Supreme Court did not reach the question of what burden of proof should apply to bond considerations under § 1226(a), or whether, at some point, a bond hearing was necessary even for those noncitizens subject to mandatory detention.  *Id.*

Over time, the lower courts developed a framework for review of noncitizen detention pending removal proceedings, but in *Jennings v. Rodriguez*, the Supreme Court reversed the Ninth Circuit's statutory interpretation holding that a noncitizen is entitled to periodic bonding hearings

under §§ 1225(b), 1226(a), and 1226(c) of the INA. 138 S.Ct. 830 (2018). In doing so, it rejected the court of appeals' construction of § 1226(a) "to mean that an alien must be given a bonding hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." *Id.* And the *Jennings* court rejected the notion that the statutory text of § 1226(a), which says only that the Attorney General "may release" the noncitizen of bond, required that the Government prove by clear and convincing evidence that the noncitizen's continued detention is necessary. *Id.* at 847-48. In so ruling, the Supreme Court did not consider constitutional arguments, but rather remanded them to the Ninth Circuit. *Id.* at 851. The Ninth Circuit, in turn, remanded the case to the district court without reaching the merits of the constitutional arguments. *Rodriguez v. Marin*, 909 F.3d 252 (2018). *Cf. Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) ("*Jennings* did not call into question our constitutional holding . . . that detention under § 1226(c) may violate due process if unreasonably long."); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 n.9 (E.D. Va. 2018) (rejecting application of *Jennings* as that case "focused on the protections required by the statute and did not reach the constitutional question"); *Liban v. Sec'y of Dep't of Homeland Sec.*, No. 18-CV-1843 (NEB/ECW), 2018 WL 8495827, at *4 (D. Minn. Dec. 10, 2018) (concluding that due process concerns still operated to limit detention under § 1226(c) after *Jennings*). To date, the question of the appropriate burden of proof under § 1226(a) remains

unresolved by the *Jennings* line of cases. *See Rodriguez v. Robbins*, Case No. 07-cv-3239-TJH-RNB (C.D. Cal.).[8]

Most recently in *Nielsen v. Preap*, the Supreme Court held that § 1226(c)'s mandatory detention requirement is not limited to noncitizens who are taken into custody immediately upon release from their criminal sentences. 139 S.Ct. 954 (2019). The *Preap* Court did not address the burden of proof in proceedings under § 1226(a).

Finally, the Government cites no, and this court could not independently find, any decision by the Tenth Circuit or district courts within the Circuit that addresses the appropriate burden of proof in the context of § 1226(a).

### 3. *Adeniji* and Section 1226(a) in Other Courts

A number of courts outside the Tenth Circuit have considered the question of what burden of proof is constitutionally mandated under § 1226(a) to satisfy constitutional due process guarantees. The Ninth Circuit held the allocation of the burden to the noncitizen to be inconsistent with due process in *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) and found that the government had to justify detention under § 1226(a) by clear and convincing evidence.[9] The *Singh* court found that the liberty interests at stake and the potential for prolonged periods of detention—

___

[8] The court takes judicial notice of the Electronic Court Filing ("ECF") docket of the United States District Court for the Central District of California, as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.". *See Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir.2011).

[9] The Ninth Circuit had previously determined that the burden must be placed on the government in *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008), but had not determined the precise burden before *Singh* where it adopted the clear and convincing evidence standard. It is not clear to this court why this standard was not applied by the IJ or BIA in Mr. Diaz-Ceja's proceedings.

four years in that case—required the government to justify the detention by clear and convincing evidence. *Id.* at 1204.

District courts to have considered the question have come to a similar conclusion. For example, in *Pensamiento v. McDonald*, 315 F. Supp. 3d 684 (D. Mass. 2018), the court held that "the Constitution requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings. Requiring a non-criminal alien to prove that he is not dangerous and not a flight risk at a bond hearing violates the Due Process Clause." *Id.* at 692 (citing *Singh*, 638 F.3d at 1203). The clear weight of authority from courts to have considered the question after the *Jennings* Court's deferral and remand of the constitutional question have come to the same conclusion. *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) ("Since *Jennings*, a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified [under the Due Process Clause].") ; *see also Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *5 (S.D.N.Y. Oct. 17, 2018); *Figueroa v. McDonald*, No. CV 18-10097-PBS, — F. Supp. 3d. —, 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 (E.D. Va. 2018).

## C. Analysis

As discussed above, the court does not pass on the Government's arguments that Mr. Diaz-Ceja is subject to mandatory detention under § 1226(c) and therefore, is precluded from any bond hearing. Rather, the court now proceeds to the question of whether Mr. Diaz-Ceja is entitled to a further bond hearing where the Government bears the burden of justifying continued detention by

demonstrating that he is unlikely to appear at further proceedings or is a danger to the community by clear and convincing evidence. [#7 at 5]. As discussed above, § 1226(a) is silent as to whether the government or the alien bears the burden of proof at a custody redetermination hearing and what amount of evidence would satisfy that burden. 8 U.S.C. § 1226(a). The Secretary argues that due process does not require the Government to bear the burden to justify detention because due process in immigration context is fundamentally different, and the government has a strong and compelling interest in detention pending removal such that the BIA's *Guerra/Adeniji* standard is constitutionally adequate. This court respectfully disagrees.

It is important to begin by noting that Mr. Diaz-Ceja's detention is not punitive, he is not being detained pursuant to a criminal sentence. Detention pending removal is instead a civil, non-punitive matter. *Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952). Supreme Court jurisprudence addressing civil detention emphasizes the importance of procedural due process protections given the important civil liberty interests at play and the government's need to show a compelling justification for such detention in the absence of an adjudicated crime. Specifically, the Supreme Court has held that civil detention violates due process absent "certain special and 'narrow' nonpunitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (citations omitted). That said, the Supreme Court has permitted civil detention in some instances when accompanied by adequate due process protections.

In analyzing the issue before it, this court considers the burdens and protections applicable in non-immigration contexts. The Bail Reform Act provides that pretrial (unconvicted) criminal

defendants may be detained pending trial only when the government meets its burden to justify such detention to protect public interests. 18 U.S.C. §§ 3141(a), 3142(e) (2018).[10] In finding pretrial detention under the Bail Reform Act constitutional, the Supreme Court emphasized the procedural safeguards afforded a detainee and the allocation of the burden to the government to prove detention was appropriate by clear and convincing evidence in an adversarial detention hearing. *Id.* at 750 (emphasizing that the government must "convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person" in a "full-blown adversary hearing"). Pretrial detention under the Act was also limited in application to "the most serious of crimes" and afforded the detainee a "prompt" detention hearing. *Id.* at 747. The *Salerno* Court found that the Act, limited in application to those facing serious crimes, properly safeguarded a detainee's rights with substantial procedural safeguards in balancing the government's interest in community safety and an individual's strong liberty interest. *Id.* at 748–51. The Supreme Court has come to similar conclusions in other civil detention contexts, such as detention for those found seriously mentally ill such that they present a danger to the public, *Addington v. Texas*, 441 U.S. 418, 425–26 (1979), but struck down such provisions when the burden improperly rested on the detainee to rebut a presumption of detention based on insanity, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

The Secretary argues that the Due Process requirements are different for noncitizens subject to removal proceedings than they are in other civil proceedings [#21 at 14], because "[i]n

---

[10] When upholding the Bail Reform Act's provisions regarding pretrial detention, the Supreme Court observed that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment," and found that pretrial detention was regulatory rather than punitive in nature. *United States v. Salerno*, 481 U.S. 739, 746–47 (1987).

the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)); *Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."). Respondent further urges this court to apply the framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), in considering the constitutionality of the burden allocation:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

> [#21 at 13].

This court finds that the *Mathews* formulation is not the most appropriate for the current circumstances. *Mathews* involved the termination of social security benefits, not the deprivation of an individual's liberty. 424 U.S. at 334–35. Instead, the court follows the framework established in the most closely analogous situation—involuntary civil detention pending trial or mental health treatment. *See, e.g.*, *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997); *Foucha v. Louisiana*, 504 U.S. 71, 76 (1992); *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Addington v. Texas*, 441 U.S. 418, 425 (1979). The court begins by considering the government's and the individual's respective interests, and then consider whether the existing process adequately balanced and protected the two.

***The Government's Interest.*** The Government has a compelling interest in ensuring that removable aliens appear for their scheduled removal proceedings and are, in fact, removed.

*Zadvydas*, 533 U.S. at 690. The Government also has an interest in protecting the community from any violent offenders and the potential for further criminality pending removal proceedings. *Id.*; *Salerno*, 481 U.S. at 749. The court concludes that the Government is pursuing a valid and compelling interest, and Petitioner does not contest the existence or validity of this interest.

**The Noncitizen's Interest.** "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha*, 504 U.S. at 80 (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). This interest is "particularly important" and "more substantial than mere loss of money." *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington*, 441 U.S. at 424).

**Allocation of the Burden.** In weighing the competing interests of the Government and Petitioner, the court finds that the current scheme of placing the burden on Petitioner to prove that he should be released on bond contravenes due process requirements. It is well settled that the Fifth Amendment Due Process Clause applies to "persons," including noncitizens present in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases); *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 374 (1886). Although the state has an admitted interest in both securing a noncitizen's appearance at further immigration proceedings and general public safety, there is no Government interest in confining noncitizens generally while their immigration proceedings are ongoing and there is no final determination that the noncitizen must be removed. *Addington*, 441 U.S. at 426 ("[T]he State has no interest in confining individuals involuntarily . . . if they do not pose some danger to themselves or others. Since the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at

least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings."). Furthermore, there is no basis to presume that every noncitizen held pursuant to § 1226(a) poses either or both kind of risks and the current allocation of the burden to the noncitizen does not ensure that detention serves either interest because detention is not premised on such findings. *Foucha*, 504 U.S. at 78 (finding that civil detention is not justified without an affirmative showing of current mental illness and dangerousness).[11] In the context of pretrial detention, the United States Court of Appeals for the Tenth Circuit has determined that the lack of citizenship alone or the risk that the defendant might be involuntarily removed are insufficient bases alone to establish a serious risk of flight. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1138 (10th Cir. 2017). Indeed, noncitizens with longstanding or deep ties to the United States and no criminal history or pending charges in removal proceedings are subject to §1226(a), when pre-removal detention would be, at most, a convenience rather than a substantive interest.

The court finds that allocating the burden to a noncitizen to prove that he should be released on bond under § 1226(a) violates due process as it assigns the risk of error to the party with the greater interest in their individual liberty as balanced against the Government's interests. The balance of these interests supports placing the risk of error on the Government by allocating it the burden of proof. *Addington*, 441 U.S. at 427 ("The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than

---

[11] The IJ's determination that Petitioner is a *per se* danger to the community is not determinative here because the framework that the IJ applied—holding that Petitioner's drug conviction is *per se* dangerous [#21-3 at 3]—appears to have been improper given the Ninth Circuit's decision in *Rosales-Aguilar*, 818 F.3d 965, 972–73 (9th Cir. 2016) which necessitated the remand from the Ninth Circuit. [#21-15; #21-16].

any possible harm to the state."); *Salerno*, 504 U.S. at 81–82; *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 692 (D. Mass. 2018) ("Requiring a non-criminal alien to prove that he is *not* dangerous and *not* a flight risk at a bond hearing violates the Due Process Clause." (emphasis in original, quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011))). This is particularly true as noncitizens are not guaranteed counsel to advocate on their behalf in their immigration proceedings. *Tang v. Ashcroft*, 354 F.3d 1192, 1196 (10th Cir. 2003). This allocation of burden is consistent with other civil detention contexts, where a person who is not subject to a final adjudication may not be deprived of their right to personal liberty without imposing the burden on the government to justify such detention.

In so ruling, this court observes that the duration of detention, though bounded by the period of removal proceedings, may—in reality—span years rather than months. In *Demore v. Kim*, the Supreme Court noted that the average length of detention under § 1226(c) was less than two months, but the average wait has since far exceeded that brief period. 538 U.S. at 529; *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018) ("The country has seen a dramatic increase in the average length of detention since *Demore*, and, as discussed at length above, [Petitioner] faces a much more significant term of detention than was at issue in *Demore*, thus enhancing his individual liberty interest and warranting additional procedural safeguards. (internal quotations and citations omitted)). As other courts have noted, the likely time period of detention is a relevant factor in this analysis as the longer the detention, the greater the individual's liberty interest.

In *Demore*, the Supreme Court found that mandatory detention under § 1226(c) was permissible in part because, unlike *Zadvydas*, detention pending further removal proceedings had

an obvious terminus usually less than ninety days from initial detention. *Demore*, 538 U.S. at 529 ("Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*.). And in *Salerno*, the Speedy Trial Act helped ensure that pretrial detention for detainees proven to pose a danger to the community had a "strictly limited" period of possible detention which contrasted sharply with the "not carefully limited" scheme in *Foucha*. *Foucha*, 504 U.S. at 81. Under § 1226(a) there is still a definite end for the initial detention, but the duration of the detention is not strictly limited in any sense of the word. In Mr. Diaz-Ceja's case, he has been detained since March 7, 2017—over eight hundred days—without a final adjudication of his removability. [#7 at 7 ¶ 3]. And the duration cannot be dismissed by presuming that the noncitizen can always control it. There may be prolonged periods of detention in part because the noncitizen is pursuing frivolous arguments to avoid removal, but in others, delay may be occasioned by the significant caseload facing the administrative agency and/or by the pursuit of good faith legal arguments. Indeed, in Petitioner's case, the Government sought remand based on a change in the law. [#21-15].

The Government's argument that the burden allocation is justified because the noncitizen "is in the best position to present evidence of the alien's ties to the community, lack of criminal activity, and any other evidence to support an alien's request for release," [#21 at 14-15], does not persuade the court otherwise. Nor does the court find the Government's argument that placing the burden on the Government "reduces the incentives" for noncitizens to provide accurate information regarding their identities compelling. [*Id.* at 15]. First, constitutional Due Process is not, and cannot be, driven by the respective availability of evidence to the Parties. Otherwise, in

the context of pretrial detention under the Bail Reform Act, the defendant, rather than the Government, would bear the burden of establishing that release is appropriate. In addition, this court is confident that the Government has access to information regarding noncitizens through its own records or investigative tools that can supplement any deficiencies in information provided by the noncitizen. Second, as discussed above, noncitizens are not guaranteed counsel in immigration proceedings, including bond redetermination hearings. Thus, any advantage due to access of information may be muted or eliminated by the noncitizen's lack of knowledge with respect to appropriate standard or procedure.

*Applicable Burden.* Having determined that the Government must bear the burden to justify Petitioner's detention under § 1226(a), the question then becomes what specific standard to impose. Petitioner seeks a clear and convincing standard. [#7 at 5]. The court "must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest . . . . [W]e must be mindful that the function of legal process is to minimize the risk of erroneous decisions." *Addington*, 441 U.S. at 426. In general, the "clear and convincing" standard applies to civil detention. *Santosky v. Kramer*, 455 U.S. 745, 756 (1982); *Salerno*, 481 U.S. at 750; *Addington*, 441 U.S. at 433. Several courts finding that § 1226(a) requires the Government to bear the burden have found that the clear and convincing evidence standard applies. *See, e.g.*, *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *Darko v. Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018).

Not every court agrees the clear and convincing burden is the proper standard for these types of proceedings, relying on *Demore*'s statement that the "when the Government deals with

deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." 538 U.S. at 528. Some courts have found that the Government must meet a lower standard in light of this latitude. *See, e.g.*, *Pensamiento*, 315 F. Supp. 3d at 692 ("Currently, the alien must prove 'to the satisfaction of the [IJ]' that he is neither dangerous nor a flight risk. If that same burden were placed on the Government, the Court is not persuaded that that standard would violate the Due Process Clause." (citation omitted)). *Pensamiento* seems to be an outlier as the majority of courts to have considered the question apply the clear and convincing standard. *Darko*, 342 F. Supp. 3d at 436 (referring to the "the overwhelming majority of courts" applying that standard).

This court diverges slightly from these holdings in fashioning the appropriate standard. In the court's view, the appropriate standards are ones that mirror the Bail Reform Act:

> The government must prove risk of flight by a preponderance of the evidence, *see, e.g., United States v. Xulam*, 84 F.3d 441, 442 (D.C.Cir.1996) (per curiam); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir.1990), and it must prove dangerousness to any other person or to the community by clear and convincing evidence, 18 U.S.C. § 3142(f).

*United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). *Cf. Salerno*, 481 U.S. at 751 ("When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat.").

The court acknowledges that the standard under the Bail Reform Act is a matter of statutory interpretation, *see Ciscernos,* 328 F.3d at 616, and the rights of noncitizens need not be coextensive to those of citizens, *Carlson*, 342 U.S. at 534; *Demore*, 538 U.S. at 522. But this court finds no persuasive justification to conclude that the same noncitizen must face different standards for the

same actions, depending upon the forum, i.e., an administrative charge for removal versus a criminal charge of illegal reentry. *Addington*, 441 U.S. at 427; *see also Demore*, 538 U.S. at 549 (Souter, J., concurring in part and dissenting in part) ("[T]he Fifth Amendment permits detention only where 'heightened, substantive due process scrutiny' finds a 'sufficiently compelling' governmental need." (quoting *Flores*, 507 U.S. at 316)); *Santosky*, 455 U.S. at 756 ("This Court has mandated an intermediate standard of proof—clear and convincing evidence—when the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money." (quotations and citation omitted)).  And the unique position of immigration law at the center of numerous other federal powers—e.g., war powers, treaty powers, and the Guarantee Clause— that has justified curtailing noncitizens' due process rights in other contexts do not appear applicable here. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 589–90 (1952) ("It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

Accordingly, so long as ICE continues to hold Mr. Diaz-Ceja pursuant to 8 U.S.C. § 1226(a) based on his *per se* danger to the community, this court finds that Petitioner is entitled an individualized bond redetermination hearing in which the Government is required to establish that continued detention is justified by clear and convincing evidence.

## II.    Petitioner's Second Claim: Excessive Bail and the Eighth Amendment

Petitioner's second claim for relief is that his continued detention violates the Eighth Amendment's guarantee against excessive bail. [#7 at 5]. The Secretary argues that this claim fails because Petitioner has not been granted any bail, and by definition has not been granted excessive bail. [#21 at 23–24]. Petitioner cites to Justice Breyer's dissent in *Jennings* for the proposition that categorically denying noncitizens bail violates the Eighth Amendment. [#7 at 5]; *Jennings*, 138 S. Ct. at 862 ("The Eighth Amendment forbids '[e]xcessive bail.' It does so in order to prevent bail being set so high that the level itself (rather than the reasons that might properly forbid release on bail) prevents provisional release. . . . That rationale applies *a fortiori* to a refusal to hold any bail hearing at all." (Breyer, J., dissenting)).

This court finds that habeas relief based on the Eighth Amendment is not warranted for at least three reasons, including lack of subject matter jurisdiction. First, to the extent that Mr. Diaz-Ceja contends that mandatory detention is unconstitutional, he currently lacks standing to raise such a claim because it appears that he is being held pursuant to §1226(a), not §1226(c) and he may not bring constitutional claims on behalf of other detainees. *See Swoboda v. Dubach*, 992 F.3d 286, 290 (10th Cir. 1993). Second, to the extent that Mr. Diaz-Ceja is arguing that the Government categorically denied him bail under § 1226(a) due to his criminal history, this court lacks jurisdiction to review the substantive determinations of the IJ and BIA. 8 U.S.C. §1252(g). Third, to the extent that Mr. Diaz-Ceja is challenging the constitutionality of preremoval detention under §1226(a), such a challenge has been implicitly foreclosed by the Supreme Court's determination in *Demore*.

### III. Petitioner's Third Claim: Jurisdiction and the NTA

In his Third Claim for Relief, Petitioner argues that his NTA lacked a date and time to appear and therefore is not a "valid charging document," thus depriving the IJ of jurisdiction to initiate removal proceedings. [#7 at 5]. Respondent counters that it is this court that lacks jurisdiction, not the IJ. [#20 at 18-21]. On Reply and as confirmed during the Status Conference, Petitioner's immigration case has been remanded by the Ninth Circuit to the BIA. This court must resolve its own jurisdiction before proceeding with any merits discussion. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (observing that without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case).[12]

Federal courts have been stripped of jurisdiction to hear many challenges to matters regarding alien detention and removal by the REAL ID Act, codified at 8 U.S.C. § 1252. *Thoung v. United States*, 913 F.3d 999, 1001 (10th Cir. 2019). Specifically, challenges to removal orders may only be heard in the court of appeals, not at the district court level. 8 U.S.C. § 1252(a)(5); *Thoung*, 913 F.3d at 1001. Additionally, § 1252(b)(9) further limits review, providing that all questions of law or fact "arising from any action taken or proceeding brought to remove an alien from the United States" are not reviewable in habeas proceedings. *Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007). Finally, § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General

---

[12] As to the other two claims for relief, the Government does not challenge the court's subject matter jurisdiction, and this court satisfied itself that it has subject matter jurisdiction over them because they are challenges to the constitutionality of the statutory framework applied to Petitioner. *See Jennings v. Rodriguez*, 138 S. Ct at 840-41.

to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." "The provision applies only to three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quotations omitted); *Tsering v. ICE*, 403 F. App'x 339, 343 (10th Cir. 2010) (finding that the claims barred by § 1252(g) are those which are "connected directly and immediately with a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" (citation and quotation omitted)).

Here, Respondent claims that Petitioner's challenge to the NTA is barred by the REAL ID Act, specifically §§ 1252(b)(9), 1252(g). [#21 at 18]. The court disagrees. The court concludes that it has jurisdiction to review the adequacy of the NTA as the NTA itself is not a final order of removal nor is it an antecedent finding of fact or law to such an order under § 1252(b)(9). *Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008) ("It appears that . . . [§ 1252(b)(9)] . . . do[es] not apply in these circumstances, as Mr. Ochieng would not be seeking review of an order of removal, but review of his detention."). As for § 1252(g), the court finds this section does not apply either because Mr. Diaz-Ceja is not challenging the Attorney General's discretionary decision to begin removal proceedings, but rather whether jurisdiction properly attached due to the alleged defect in the NTA. *Veloz-Luvevano v. Lynch*, 799 F.3d 1308, 1315 (10th Cir. 2015) (§ 1252(g) deprives the court of jurisdiction to review issues of "prosecutorial discretion").

In *Tsering*, the Tenth Circuit looked to law from the Fifth Circuit when interpreting § 1252(g). 403 F. App'x at 343. This court again looks to the Fifth Circuit's recent jurisprudence on § 1252(g) for guidance. In *Najera v. United States*, the Fifth Circuit held that § 1252(g) did not

bar an alien's claim against the United States for false imprisonment for the time that he was detained before being issued a Notice to Appear. *Najera v. United States*, -- F.3d --, 2019 WL 2364499, at *2 (5th Cir. June 5, 2019). The court reasoned that "removal proceeding commence when ICE files the appropriate charging document with the immigration court." *Id.* (citing *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001)). The question before the court is not whether Respondent may initiate removal proceedings, but whether the NTA lacking a specific time and place for appearance was effective in doing so.[13]

***Defects in the NTA.*** Petitioner argues, based on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), that his NTA lacked a date and time to appear, and therefore the NTA is fatally deficient and did not confer jurisdiction to the Secretary for removal proceedings. [#7 at 8]. *Pereira* held that an NTA which does not specify a time or date is "not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule [which governs discretionary relief in some limited circumstances]." *Pereira*, 138 S. Ct. at 2110. Some courts have interpreted the holding in *Pereira*, limited to calculating the stop-time rule, to hold that the NTA was therefore void as lacking the essential character of an NTA and thus the removal order was similarly a nullity. *USA v. Arteaga-Centeno*, 353 F. Supp. 3d 897 (N.D. Cal. 2019)*, order vacated on motion for*

---

[13] Some courts have come to the opposite conclusion, but this court respectfully disagrees. In *Vargas v. Bath*, which the Secretary relies on, the Eastern District of Wisconsin found that an alien's claim that the immigration court lacked jurisdiction "would necessarily amount to an invalidation of his order of removal, and the jurisdiction-stripping provisions of the INA manifestly prohibit this court from granting such relief." *Vargas v. Beth*, No. 19-cv-92, 2019 WL 1320330, at *5 (E.D. Wis. Mar. 22, 2019). The court disagrees because while it is true that finding that the immigration court lacked jurisdiction would necessarily (although not conclusively) cast doubt on the subsequent orders of the IJ and BIA, the court would not be invalidating the removal order but rather recognizing that the order is a nullity and was never valid.

*reconsideration considering intervening change of authority*, No. 18-CR-00332-CRB-1, 2019 WL 1995766 (N.D. Cal. May 6, 2019).

But the weight of authority rejects Petitioner's argument that a NTA that fails to include a time or place infects the entire proceeding. Under 8 C.F.R. § 1003.14, jurisdiction vests when a "charging document is filed with the Immigration Court." The "charging document" may include a NTA but it is not required. 8 C.F.R. § 1003.13 ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . For proceedings initiated after April 1, 1997, these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."); *United States v. Garcia*, No. 2:18-CR-68-FTM-38MRM, 2019 WL 399612, at *3 (M.D. Fla. Jan. 31, 2019). A specific time and date is not a mandatory element of a NTA—under § 1003.18(b), the NTA need only specify such information "where practicable."[14]

Nearly every court to have considered this question has declined to give *Pereira* the expansive reading Petitioner seeks. *Banegas Gomez v. Barr*, 922 F.3d 101, 110-11 (2d Cir. 2019) ("[A]n NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court . . . ."); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) ("[T]he regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction."); *Santos-Santos v.*

---

[14] Unhelpfully, the Notice to Appear in the statute does have this requirement, § 1229(a)(G)(i), but this is not the "Notice to Appear" required to vest jurisdiction in the immigration court, and thus the court does not believe that requirement is salient to this question. *Santos-Santos*, 917 F.3d at 490 n.4 ("Nothing in 8 U.S.C. § 1229 or elsewhere in the code requires the Notice to Appear specified in § 1229(a)(1) to commence immigration proceedings and vest jurisdiction with the IJ.").

*Barr*, 917 F.3d 486, 489 (6th Cir. 2019) ("Failure to include this information, however, 'shall not be construed as affording the alien any substantive or procedural rights.' No references to the time and place of the hearing are required to vest jurisdiction under the regulation." (citation omitted)). Indeed, courts in the Tenth Circuit have come to the same conclusion. *United States v. Cardenas-Rodriguez*, No. 18-10104-EFM-1, 2019 WL 1058197, at *4 (D. Kan. Mar. 6, 2019); *Alderete-Lopez v. Whitiker*, No. CV 18-1114 JBSCY, 2018 WL 6338420, at *24 (D.N.M. Dec. 5, 2018). And the Tenth Circuit seems to interpret *Pereira* in this same manner. *Soriano-Mendosa v. Barr*, No. 18-9535, 2019 WL 1531499, at *4 (10th Cir. Apr. 9, 2019) (approvingly citing *Karingithi* and finding "no jurisdictional significance in the failure to include a date and time in the notice to appear").

The issue in *Pereira* was "narrow" and the court sees no basis in the applicable regulations to find that the failure to include a time and date in the NTA divests the immigration court of jurisdiction. The court agrees that the failure to include the notice and time of hearing in the NTA does not operate to divest the immigration court of jurisdiction and rejects Petitioner's claim to the contrary.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED**:

1) Petitioner Joel Diaz-Ceja's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 is **GRANTED IN PART** and **DENIED IN PART** as stated above;

2) That within **fourteen (14) days** of this Opinion and Order, to the extent it continues to hold Mr. Diaz-Ceja pursuant to 8 U.S.C. § 1226(a), the Government shall take Mr. Diaz-Ceja before an immigration judge for an individualized bond hearing in which Government shall bear the burden to demonstrate by clear and convincing evidence that he is a danger to the community such that no condition or combination of conditions will reasonably assure the safety of the community;

3) A status report is **DUE** the earlier of **three days** following the completion of the bond hearing or **fifteen (15) days** from the issuance of this Order.

DATED: July 2, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge